IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

THERESA B. BRADLEY,

      Plaintiff,

vs.                                  Case No.: 4:05cv220-RH/WCS

STATE OF FLORIDA,
and AGENCY FOR WORKFORCE
INNOVATION,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff, proceeding *pro se*, filed a complaint asserting jurisdiction under 28 U.S.C. § 1331 and § 1332.  Doc. 1.  Two days later, Plaintiff filed an addendum to the complaint, doc. 4.  Plaintiff also filed a motion for leave to proceed *in forma pauperis*, doc. 3, which is not on the forms utilized by this Court, but which will be accepted for present purposes.  Plaintiff's motion should be granted for the limited purpose of dismissal.

      Plaintiff has alleged that she sought employment from Snelling Personnel Services in West Palm Beach, Florida in mid-August of 2004.  Doc. 1.  She was assigned to work as a receptionist with a contracting company and would work 40 hours per week.  *Id.*  She further alleges that on or about September 2, 2004, "the State of

Florida Governor Jeb Bush issued a warning to its citizens to evacuate the State of Florida as a result of Hurricane Frances with numerous hurricanes threatening to hit the state."  *Id.*  On that same day, the contracting company where Plaintiff worked began hurricane preparations and "demanded that the Plaintiff engage in hurricane disaster preparation with duties well-outside of the agreement between the parties, including" moving equipment and computers and furniture away from windows.  *Id.*  Plaintiff told the contracting company that she was not physically able to lift the "heavy items and had no knowledge concerning disconnecting complex computer equipment."  *Id.*  Plaintiff alleges that due to "the Hurricane Frances disaster preparation demands placed upon the Plaintiff the contract company terminated Plaintiff's work assignment."  *Id.*  Plaintiff attempted to contract her employer, Snelling Personnel, but the office was closed because of the approaching hurricane.  *Id.*

At that time, Plaintiff was staying in a hotel while looking for another residence, but fearing for her safety, she heeded the "Governor's warning to evacuate Palm Beach County . . ., boarded an Amtrak Auto train September 3, 2004[,] and rode with her automobile and its contents to Lorton, VA."  *Id.*  Snelling Personnel was unable to find another work assignment for Plaintiff in West Palm Beach, Florida, and there were no work assignments in the Washington, D.C. area for which Plaintiff was qualified.  *Id.*

In mid-September, 2004, Plaintiff filed for Federal Hurricane Disaster Unemployment Assistance as well as State of Florida unemployment.  *Id.*  Plaintiff contends that between September 15, 2004, until April 21, 2005, "the Defendants State of Florida and Agency for Workforce Innovation never contacted the Plaintiff to conduct a hearing by phone or in person with the Plaintiff."  *Id.*  "Despite the Defendants' failure to conduct a hearing as required by law, the Defendants denied unemployment to the

Plaintiff." *Id.* It is not entirely clear, but it appears that following a hearing on April 21, 2005, Plaintiff was awarded some type of unemployment benefits. *Id.* Plaintiff further contends that between September 15, 2004, and June 8, 2005, "Defendants State of Florida and Agency for Workforce Innovation/Division of Disaster Unemployment Assistance, never contacted the Plaintiff to conduct a hearing by phone and in person." *Id.* "Despite the Defendants['] failure to either contact or conduct a hearing with the Plaintiff, the Defendants denied the Plaintiff Disaster Unemployment Assistance." *Id.* A "second DUA [Disaster Unemployment Assistance] hearing took place June 8, 2005, affirming a November 11, 2004 award after a 'non-hearing,' which resulted in the denial of DUA benefits to the Plaintiff." *Id.*

Plaintiff claims that Defendants violated the Federal Emergency Disaster Relief Act without stating any specific provision which has been violated. Doc. 1. Plaintiff complains that there was delay in handling her applications and that Defendants did not "conduct a full hearing in a proper and timely manner on the merits of Plaintiff's claims . . . ." *Id.* Plaintiff additionally claims that "Defendants capriciously denied Disaster Unemployment to the Plaintiff" and contends that her unemployment was caused by the hurricanes. *Id.* Plaintiff seeks monetary damages in excess of $75,000 against Defendants "for their failing to timely and fully conduct hearings for eight (8) months . . . in violation of the Federal Emergency Relief Act." *Id.*

Plaintiff additionally seeks to bring a supplemental state law claim for Fraud by asserting that Defendants led Plaintiff to believe that she would be entitled to DUA for her unemployment, dislocation, and the like. Doc. 1. Plaintiff states that Defendants should have known that their representations were false, that the representations were intended to induce Plaintiff to act, and that Plaintiff "suffered damages in justifiable

reliance on the representations." *Id.* Plaintiff also seeks to bring a supplemental state law claim for the intentional infliction of emotional distress. *Id.* Plaintiff contends that Defendants' eight month delay in addressing Plaintiff's DUA claims was outrageous and reckless and caused Plaintiff "hardship and severe emotional distress." *Id.*

**A.      Jurisdiction**

> In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases – civil actions that arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. In order to provide a neutral forum for what have come to be known as diversity cases, Congress also has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens. § 1332.

Exxon Mobil Corp. v. Allapattah Services, Inc., -- S.Ct. ---, 2005 WL 1469477, *5 (June 23, 2005). Plaintiff asserts that this Court has jurisdiction over this case pursuant to both its diversity jurisdiction and federal question jurisdiction.

The burden of showing that the parties are citizens of different states, in other words, that there is diversity jurisdiction pursuant to 28 U.S.C. § 1332, is on the Plaintiff. Jones v. Law Firm of Hill and Ponton, 141 F.Supp.2d 1349, 1354 (M.D. Fla. 2001). Further, "[d]iversity is determined when the suit is instituted, not when the cause of action arose." Jones, 141 F.Supp.2d at 1354-55.

As a matter of record, Plaintiff lists a Maryland address as her return address but alleges that she is "a legal resident of Florida." Doc. 1, p. 1. She states that she has resided "continuously in Florida for the past 20 years with 6 years residency in Palm Beach County, FL." *Id.*, at 6.

> A person is not necessarily a citizen of, or domiciled in, the state in which he resides at any given moment. State citizenship, or "domicile" for

purposes of diversity jurisdiction is determined by two factors: residence and intent to remain.

Jones, 141 F.Supp.2d at 1355 (citations omitted).  Or put another way, "domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."  Mississippi Choctaw Indian Band v. Holyfield, 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989), *quoted in* Duff v. Beaty, 804 F.Supp. 332, 334 (N.D. Ga. 1992).  Thus, even though Plaintiff's address shows she currently resides in Maryland, Plaintiff has clearly alleged that she is a "legal resident" of Florida.  Thus, it is assumed for present purposes that Plaintiff is a "citizen" of the State of Florida, and that although she is currently residing in Maryland, she intends to return to her domicile which is in the State of Florida.  On that assumption, Plaintiff fails to demonstrate that diversity jurisdiction exists.

Nevertheless, even lacking diversity jurisdiction, if the Court has original jurisdiction over a federal question claim, then the case may still be decided on the merits and the Court could "exercise supplemental jurisdiction over additional claims[1] that are part of the same case or controversy."  Exxon Mobil Corp., 2005 WL 1469477, at *5, *relying on* Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).  Yet, "for a federal court to invoke supplemental jurisdiction under Gibbs, it must first have original jurisdiction over at least one claim in the action."  Exxon Mobil Corp., 2005 WL 1469477, at *6.  Here, there does not appear to be federal question jurisdiction either.

---

[1] Plaintiff has attempted to bring two state law claims which may only be addressed through supplemental jurisdiction since there is no diversity jurisdiction.

Plaintiff makes the broad and conclusory assertion that Defendants violated the "Federal Emergency Disaster Relief Act," but as noted above, Plaintiff has not stated any specific provision of that Act that has been allegedly violated.  Doc. 1.  There is no reference to any federal law or statute that has been violated, and the mere allegation that there was delay in processing an application for Disaster Unemployment Assistance (DUA) is insufficient to demonstrate the violation of federal law.

Though incorrectly titled by Plaintiff, the Disaster Relief Act (DRA) is the federal law governing this case.  The DRA, as set forth in 42 U.S.C. § 5177, provides that: "The President is authorized to prove to any individual unemployed as a result of a major disaster such benefit assistance as he deems appropriate while such individual is unemployed for the weeks of such unemployment . . . ."  42 U.S.C. § 5177(a).  Considering Plaintiff's allegations in the complaint, this is obviously the Act governing her claim and her ability to receive unemployment assistance.  If there is a federal cause of action here, Plaintiff may bring a claim under this Act through the Court's federal question jurisdiction, *see* 28 U.S.C. § 1331, unless barred by a more specific statutory basis.

Decisions concerning whether or not to grant benefits under the DRA are discretionary decisions.  See Rosas v. Brock, 826 F.2d 1004, 1008 (11th Cir. 1987) (considering claim of plaintiff who was denied benefits because he was not deemed an "unemployed worker" as defined by the Disaster Relief Act).  In general, the Administrative Procedures Act permits judicial review of federal administrative agency actions, including discretionary decisions, unless precluded by statutory prohibition.  Rosas, 826 F.2d at 1007-08.  Another provision of the DRA provides:

> The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

42 U.S.C. § 5148.  In considering this statute, the Eleventh Circuit held that the denial of unemployment benefits pursuant to federal regulations is the type of discretionary action which Congress intended to insulate from judicial review.  826 F.2d at 1009.  It matters not whether the claim is for damages is declaratory or injunctive relief.  The statute demonstrates Congressional intent to not have the Government "answerable in any way to claims arising out of discretionary actions."  *Id.*, at 1008.  Thus, because federal courts are courts of limited jurisdiction and Congress has specifically removed this Court's jurisdiction through § 5148, there is no claim within the court's § 1331 jurisdiction.

**Additional basis for Dismissal**

Claims against these Defendants could be brought pursuant to 42 U.S.C. § 1983. However, the Rosas case, *supra,* made clear that when state employees are determining whether or not applicants are entitled to Disaster Unemployment Assistance, those actions are "nothing more than application of federal rules."  826 F.2d at 1007.  Thus, "the federal involvement in those actions is so pervasive that the actions are taken under color of federal and not state law."  *Id.*  Accordingly, this Court has no jurisdiction over these State Defendants pursuant to 42 U.S.C. § 1983.

Finally, even if there were any other statutory provision which would give this Court jurisdiction over this case, Defendants are protected by Eleventh Amendment immunity from suit.  Absent limited exceptions, a State and its agencies are immune from suit in this Court by force of the Eleventh Amendment.  Carr v. City of Florence,

Alabama, 916 F.2d 1521, 1524 (11th Cir. 1990); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 58, 116 S. Ct. 1114, 1124, 134 L. Ed. 2d 252 (1996) (concluding "that the type of relief sought is irrelevant to whether Congress has power to abrogate States' immunity."). Regardless of whether Plaintiff is a resident of the State of Florida or of Maryland, the Eleventh Amendment bars this action against Defendants. Employees of Dept. of Public Health and Welfare, Missouri v. Department of Public Health and Welfare, Missouri, 411 U.S. 279, 93 S. Ct. 1614, 36 L. Ed. 2d 251 (1973); *cited in* Pennhurst State School & Hospital, 465 U.S. at 100, 104 S. Ct. at 908; Ocean v. Kearney, 123 F. Supp. 2d 618, 621 (S.D. Fla. 2000); Arthur v. Florida Dept. of Transp., 587 F. Supp. 974, 975 (S.D. Fla. 1984)(noting it is well established that "that an unconsenting state is immune from suits brought in federal court by citizens of other states."). Plaintiff may not sue the State of Florida or the Agency for Workforce Innovation and this case must necessarily be dismissed.

**Conclusion**

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's *in forma pauperis* motion, doc. 2, be **GRANTED**, but that Plaintiff's complaint, doc. 1, be **DISMISSED** for lack of subject matter jurisdiction and because Defendants are protected by Eleventh Amendment immunity.

**IN CHAMBERS** at Tallahassee, Florida, on July 7, 2005.

s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**